UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

MRO RESOURCES, LLC,

      Plaintiff,

v.

SMITH CASTINGS, INC.

      Defendant.

Case No. 14- _____ - __

Hon. _____

**COMPLAINT**

---

Varnum LLP
Gary J. Mouw (P69236)
Attorneys for Plaintiff
P.O. Box 352
Grand Rapids, MI  49501-0352
(616) 336-6000
gjmouw@varnumlaw.com

---

There is no other pending or resolved civil action
arising out of the transaction or occurrence alleged
in the Complaint.

MRO Resources, LLC, by and through its attorneys, Varnum LLP, states for its

Complaint against Smith Castings, Inc., as follows:

**PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff, MRO Resources, LLC ("MRO"), is a limited liability company, whose

members are John Redshaw, a resident of Illinois, and Kenneth Fristoe, a resident of South

Carolina.

2.    Defendant, Smith Castings, Inc. ("Smith Castings"), is incorporated in the state of

Michigan and its principal place of business is in the state of Michigan.

3.    The amount in controversy in this matter exceeds $75,000, exclusive of interests

and costs.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy is greater than $75,000, and there is complete diversity of citizenship between the parties.

5.      Venue is proper in this Court as Smith Castings resides in this district.

## GENERAL ALLEGATIONS

6.      In the fall of 2013, MRO, through its agents, began negotiating with Smith Castings, and its owner, Eric Frantz, for the purchase of Smith Castings. Smith Castings operates a ferrous metal casting foundry in Kingsford, Michigan.

7.      To protect the information disclosed by MRO to Smith Castings, the parties entered into a Confidentiality Agreement in September 2013, prohibiting Smith Castings (and its agents) from disclosing to any third-party any information relating to the business or interests of MRO, including information relating to MRO's negotiations with Smith Castings. See Confidentiality Agreement, attached as **Exhibit A**.

8.      Over a period of approximately three months, MRO and Smith Castings negotiated and reached an agreement as to the essential terms for the purchase of Smith Castings, including (importantly) the purchase price.

9.      Consistent with the existence of this agreement, Mr. Frantz informed MRO that "we are in basic agreement." As such, Mr. Frantz recognized that the parties had a contract.

10.     Given that the essential terms of the agreement were in place, a Real Estate Purchase Agreement and Stock Purchase Agreement were prepared and delivered to Smith Castings in January 2014.

11.     With the essential terms of the agreement reached, MRO moved to perform environmental due diligence. That environmental due diligence needed to be conducted did not

affect the existence of an agreement, but instead was merely a standard condition to closing, the same as the ability to secure financing is a standard condition.

12.     Smith Castings understood that environmental due diligence needed to occur prior to closing, especially since Smith Castings operated on a former Ford Motor Company manufacturing site.  Smith Castings also knew that environmental due diligence was in fact conducted, having granted MRO and its consultants access to Smith Castings' facility and property.

13.     Relying on the fact that Smith Castings had agreed to the essential terms of the sale, MRO engaged (and incurred the expense of) consultants to conduct environmental due diligence, performing a Baseline Assessment and a Phase One Environmental site assessment.

14.     During the period in which environmental due diligence was being conducted, Mr. Frantz continued to represent to MRO's agents that there was an agreement.

15.     Once the environmental due diligence was conducted, MRO moved to finalize the parties' formal agreement.  To that end, and as part of the environmental due diligence process, the parties agreed to modify the structure of their agreement from a stock purchase agreement to an asset purchase agreement.  None of the material provisions of the parties' agreement changed, however, including the consideration to be received by Smith Castings for the sale of the business.

16.     In May 2014, MRO provided Smith Castings the formal purchase agreements, incorporating the essential terms upon which the parties' previously agreed.

17.     Breaching the parties' agreement, Smith Castings refused to execute the formal purchase agreement, informing MRO that it had received a "better offer" from a "new buyer."

3

18.     Not only did Smith Castings breach the parties' agreement, but, upon information and belief, it also disclosed information relating to MRO's negotiations and offers to third-parties, including the "new buyer," which breached the Confidentiality Agreement.

## COUNT I – BREACH OF AGREEMENT TO SELL

19.     MRO restates the allegations contained in the foregoing paragraphs as if they were recited herein.

20.     MRO reached an agreement with Smith Castings as to the essential terms for the purchase of Smith Castings.

21.     Smith Castings breached this agreement, refusing to sell the company to MRO on the terms reached.

22.     MRO suffered damages as a result of Smith Castings' breach of the agreement, including, but not limited to, the difference in the purchase price between the parties' agreement and for what Smith Castings sells the business to another buyer, due diligence costs, and other damages.

WHEREFORE, MRO requests that this Court enter judgment in its favor and against Smith Castings in the amount sufficient to compensate it for all of its losses and damages incurred as a result of Smith Castings' conduct, and for all other relief to which it may be entitled, including reasonable attorneys' fees and expenses.

## COUNT II – BREACH OF CONFIDENTIALITY AGREEMENT

23.     MRO restates the allegations contained in the foregoing paragraphs as if they were recited herein.

24.     MRO entered into a Confidentiality Agreement with Smith Castings, which prohibited Smith Castings from disclosing, directly or indirectly, any information relating to

MRO's business or interests (including information relating to the negotiations and the parties' agreement) to any third-party.

25.     Upon information and belief, Smith Castings breached this agreement, disclosing information relating to MRO, the negotiations, and the parties' agreement, to third-parties, including the "new buyer."

26.     MRO suffered damages as a result of the breach.

WHEREFORE, Plaintiff requests that this Court enter judgment in its favor and against Defendant Smith Castings in the amount sufficient to compensate it for all of its losses and damages incurred as a result of Smith Castings' conduct, and for all other relief to which it may be entitled, including reasonable attorneys' fees and expenses.

## COUNT III – PROMISSORY ESTOPPEL

27.     MRO restates the allegations contained in the foregoing paragraphs as if they were recited herein.

28.     MRO and Smith Castings reached an agreement as to the essential terms for the purchase of Smith Castings.

29.     Consistently, Smith Castings' owner, Eric Frantz, informed MRO that the parties were in basic agreement as to the terms of the sale.

30.     Mr. Frantz should have reasonably expected that his promise to sell Smith Castings on the terms reached would induce action of a definite and substantial character on the part of MRO.

31.     Relying upon Mr. Frantz promise to sell, MRO conducted environmental and other due diligence, incurring significant costs and expenses.

32.     Smith Castings' breached its promise to sell the business to MRO on the terms reached.

33.     As a result of Smith Castings' actions, MRO suffered damages, including, but not limited to, due diligence costs incurred.

WHEREFORE, MRO requests that this Court enter judgment in its favor and against Smith Castings in the amount sufficient to compensate it for all of its losses and damages incurred as a result of Smith Castings' conduct, and for all other relief to which it may be entitled, including reasonable attorneys' fees and expenses.

Respectfully submitted,

Vᴀʀɴᴜᴍ

Attorneys for Plaintiff

Dated:  September 4, 2014                    By:   /s/*Gary J. Mouw*
                                                    Gary J. Mouw (P69236)
                                             Business Address, Telephone, and E-mail:
                                                    P.O. Box 352
                                                    Grand Rapids, MI  49501-0352
                                                    616/336-6000
                                                    gjmouw@varnumlaw.com

8661499_1.DOCX